IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Case No. 21-mj-54 (HB)

**AFFIDAVIT OF SARA THOMAS
<u>IN SUPPORT OF A CRIMINAL COMPLAINT</u>**

I, Sara Thomas, being duly sworn, depose and state as follows:

1. Your affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and has been since December of 2016. I am an investigator or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. Your affiant has participated in numerous criminal investigations of individuals and entities related to violations of Federal Laws, particularly those under Titles 18, 21, and 26 of the United States Code.

2. This Affidavit is submitted in support of a criminal complaint charging Dayton Charles Sauke (hereafter identified as "Sauke") with being in possession of an unregistered firearm, in violation of 21 U.S.C. §§ 5841, 5861(d), and 5871. The facts set forth herein are based on my review of law enforcement reports and conversations I have had with other law enforcement personnel. The facts set forth herein do not include all the facts related to this investigation, just those facts necessary to support probable cause for the charge alleged in the Complaint.

3. On Friday, July 30, 2020, the Olmsted County Sheriff's Office (OCSO) informed your affiant that a Confidential Informant provided information that **Sauke** was selling narcotics and engaged in manufacturing and/or dealing firearms without a license. The Confidential Informant recalled seeing **Sauke** offer a manufactured firearm for sale on

1

the social media platform Snapchat in the past. The Confidential Informant provided screen shots of **Sauke's** Snapchats.[1]

4. Your affiant and the OCSO attempted to corroborate the information and locate the posts, but learned that **Sauke's** posts were only visible to his friend group on Snapchat. The OCSO informed your affiant that there were no other known avenues to pursue in order to purchase firearms from **Sauke**.

5. On December 6, 2020, an ATF special agent acting undercover sent **Sauke** a friend request on Snapchat using an undercover profile. **Sauke** accepted the friend request, making future posts visible to the ATF. From December 6, 2020 through today's date, the ATF monitored **Sauke's** Snapchat account. **Sauke** made numerous posts consistent with manufacturing and dealing firearms without a license, as well as using drugs and dealing drugs.

6. On December 26, 2020, **Sauke** posted pictures of what he represented to be a "sawn-off" shotgun in a vehicle:

---

[1] Photos contained in this affidavit that are not dated between December 6, 2020 and January 14, 2021, or that have a gray colored phone instead of a black colored phone, are from the Confidential Informant prior to the ATF's undercover monitoring and contacts with **Sauke**.



7. The following post appeared on January 5, 2021:



Notably, in the above post, **Sauke** indicates he does not care if he is helping felons conceal and carry everywhere they go in 2021.

8.     On January 8, 2021, **Sauke** posted the following on Snapchat:



9. Also on January 8, 2021, law enforcement obtained paperwork from **Sauke's** probation officer which included forms filled out by **Sauke** during December 2020.[2] In these forms, **Sauke** documented that he has "a real urge to kill", is "a very angry person consumed

---

[2] On November 6, 2019, Sauke was sleeping in the driver's seat of a running vehicle parked on a street and had a suspended license. A deputy approached Sauke and woke him up. The deputy saw a medication bottle and learned it contained Promethazine with Codeine, which requires a prescription. Sauke admitted he did not have a prescription. The deputy then found a loaded shotgun, a vape containing THC liquid, two vape components containing THC, and two counterfeit $100 bills. Sauke was on probation for carrying a firearm in public at the time of this incident. Sauke pled guilty to gross misdemeanor 5th degree possession of a controlled substance and misdemeanor illegal transport of a firearm. Sauke was sentenced to a statutory stay of adjudication (no conviction) on the controlled substance offense, and paid a fine for the firearm offense (deemed a petty misdemeanor conviction under Minnesota law). He is currently under supervision for this offense.

by hate", and his "anger and hatred for people is valid." **Sauke** also documented on the forms:

- "I carry guns wherever I go and wish that somebody ANYBODY would find the courage to play games with me."
- "It's a Christmas miracle that I haven't put anyone in the dirt yet."
- "Smoking bud helps me avoid triggering my anger. When sober me snaps someone's neck don't say I didn't warn you. The court system is seriously playing with fire for no good reason."
- "Cops can feel my wrath too. I've been tazed, stabbed and numbed numerous times that shit doesn't phase me. Its not a matter of if it's a matter of when."

10. On January 12, 2021, **Sauke** made the following threatening posts:







11.     On January 14, 2021, **Sauke** arranged to sell the undercover ATF agent a firearm he had advertised on Snapchat. **Sauke** informed the undercover agent that the gun wouldn't be ready until Friday afternoon (January 15), because he was waiting on the frame. **Sauke** and the undercover agent then exchanged a series of text messages to arrange logistics for the transaction. During these conversations, **Sauke** also agreed that he would customize a second gun that he would build specifically for the agent.

12.     As a result of the communications between **Sauke** and the undercover agent, on Friday, January 15, 2021, the ATF engaged in a controlled purchase of a privately made firearm from **Sauke. Sauke** arrived at the meeting spot he had prearranged with the agent, a parking lot of a business in Faribault, Minnesota, and met with the undercover agent with whom he had been communicating, as well as a second undercover agent who accompanied the first agent, posing as another potential customer. **Sauke** sold the privately made firearm to the first agent for $1,500. **Sauke** then discussed manufacturing additional firearms for both of the undercover agents. **Sauke** told the undercover agents that he charges $450 up front for each gun, followed by $250 once the firearm is complete. The undercover agents agreed to purchase two additional firearms from **Sauke** and paid him $900 toward those purchases.

13.     During the transaction**, Sauke** told the undercover agents that he sold 120 Glocks in 2020. Sauke indicated that he was able to sell firearms at a lower price than his competition due to his high volume of customers.  **Sauke** also showed the undercover Agents photographs on his cell phone of firearms they could purchase. During the conversation, **Sauke** also said he had a sawed-off shotgun in his car, and normally carries a 1911 firearm. **Sauke** was taken into custody once the controlled purchase was completed.

14. After Sauk was taken into custody, Your Affiant could see in plain view what appeared to be a short barreled shotgun next to a box of shotgun ammunition on the rear floorboard of the vehicle **Sauke** had driven to the location. From what Your Affiant could see, the short barreled shotgun appeared similar to the gun shown in photos **Sauke** posted on Snapchat on December 26, 2020:



15. The vehicle was towed to the Faribault Police Department and Your Affiant obtained a federal search warrant for the vehicle. Pursuant to the warrant, ATF Group Supervisor (GS) Special Agent Calvin Meyer recovered the firearm from **Sauke's** vehicle.

11

16. Pursuant to 26 U.S.C. § 5841, certain categories of firearms must be registered with the National Firearms Registration and Transfer Record (NFRTR). Those categories are defined at 26 U.S.C. § 5845. Among them, are shotguns with a barrel length of less than 18 inches, commonly referred to as "short barreled" shotguns. 26 U.S.C. § 5845(a).

17. GS Meyer has been admitted in federal court in the District of Minnesota as a interstate nexus expert. GS Meyer examined the firearm and made a preliminary determination that it is a 12-gauge shotgun and the barrel length is approximately 11 inches and the overall length is approximately 18 inches. Therefore, it is a firearm that must be registered with the NFRTR.

18. On January 15, 2021, ATF Industry Operations Investigator (IOI) Sarah Schmitt conducted a query of the NFRTR to determine if **Sauke** possessed any lawfully registered devices under the National Firearms Act of 1934. IOI Schmitt determined that **Sauke** had no registered devices.

19. Based on the foregoing, Your Affiant has probable cause to believe that on January 15, 2021, Dayton Charles Sauke was in possession of an unregistered firearm in the State and District of Minnesota; in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.

SARA THOMAS
Special Agent
ATF

SUBSCRIBED and SWORN before me
by reliable electronic means via Facetime and email
pursuant to Fed. R. Crim. P. 41(d)(3).

This 15th day of January, 2021.

12

Hildy Bowbeer
United States Magistrate Judge