UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| UNITED STATES OF AMERICA, | ) | Criminal No. 21-CR-036 (NEB/DTS) |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF LAW IN** |
| v. | ) | **SUPPORT OF MOTION TO** |
| | ) | **SUPPRESS STATEMENTS** |
| DAYTON CHARLES SAUKE, | ) | |
| | ) | |
| Defendant. | ) | |

The record in this case establishes the following facts. Dayton Sauke was subjected to custodial interrogation. He invoked his right to silence unequivocally. The law enforcement personnel who questioned him did not respect this, and continued with unsolicited comments and more. This conduct included outright questions and other statements and conduct likely to elicit an incriminating response, to which he responded. His responses should be suppressed.

Facts

The facts relating to Mr. Sauke's arrest and interrogation ought not be in significant controversy. Following an interaction with undercover agents, Dayton Sauke was arrested at 12:57 pm on January 15, 2021. He was handcuffed and taken to the Faribault Police Department.

Beginning approximately 45 minutes later, having seen no judicial official or lawyer in the interim, Mr. Sauke was questioned by two Special Agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The entirety of this interaction was taped;

the recording was admitted as Government Exhibit 1 to the hearing on this motion. As reflected on this tape, the interrogation began at 1:43 pm, and ran until 1:54.

The recording begins with ATF Special Agent Thomas stating the date and time and making the observation that "he is in custody."  At minute 1:20 of the recording, the agents repositioned the handcuffs on Mr. Sauke, from back to front.  He was offered water and access to a bathroom at minute 1:45, and accepted the offer of water, although it is not clear that any was provided.  The agents asked Mr. Sauke a series of booking questions before any advice of rights process was attempted, including his name, date of birth, address, and phone number.

The advice of rights process began at minute 3:50.  Mr. Sauke was instructed that anything he said "can be used" against him, not that it can and will.  At minute 4:56, following the formal *Miranda*-based waiver, an agent asked "no one threatened you, forced you to talk to us, anything like that?"  Mr. Sauke is heard to respond "I felt pretty threatened, but . . .  (unintelligible)."  No attempt was made to clarify what he meant.

At minute 5:15, Mr. Sauke invoked his right to silence. When asked "are you willing to talk to us?" he replied "I don't want to talk."

Without initiation from Mr. Sauke, the agents continued to speak to and question him.  Although he did not ask, he was told that the agents wanted to tell him about the process going forward.  Although booking questions preceded the *Miranda* warning, he was asked for his Social Security number and city and state of birth, and whether he wished them to contact anyone.  Again without any initiation by Mr. Sauke, beginning at minute 6:40, an agent entered into a monologue about what would happen going forward.

Beginning at minute 7:00, the agents asked Mr. Sauke if he had any questions. His answer was an unambiguous "no."  He was told that if he and any questions he should let the agents know, to which he responded "ok."  Notwithstanding these clear answers, the agents repeated the question, asking if he had any questions for them and saying that they just want to make sure.  In response, at minute 7:30, Mr. Sauke asked about the kind of court the next proceedings would be in.  One of the agents responded at length, asking questions that elicited a response from Mr. Sauke calling the Bureau of Alcohol Tobacco Firearms and Explosives a convenience store.  The prosecution seeks to preserve the option to use this statement against him.  No other statements are attributed to him, before or after the taped interrogation session.

### Analysis

The facts on the record in this case establish that Mr. Sauke was subjected to custodial interrogation, that he unambiguously and repeatedly invoked his right to silence, and that the interrogating agents did not respect this.  The resulting statements should be suppressed from further use against him in this case.

### Custody

By any measure, Mr. Sauke was subjected to custodial interrogation.  The factors outlined by Eighth Circuit precedent establish this.  In *United States v. Griffin*, 922 F.2d 1343 (8th Cir. 1990), the Circuit identifies six factors to consider in determining whether a person is in custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;
> (2) whether the suspect possessed unrestrained freedom of movement during questioning;
> (3) whether the suspect initiated contact with authorities or voluntary acquiesced to official requests to respond to questions;
> (4) whether strong arm tactics or deceptive stratagems were employed during questioning;
> (5) whether the atmosphere of the questioning was police dominated; or,
> (6) whether the suspect was placed under arrest at the termination of the questioning.

*Griffin*, 922 F.2d at 1349. With the possible exception of the fourth factor, strong-arm tactics or deceptive stratagems, each of these weighs in favor of a conclusion that he was in custody. This is something that the agents understood, as they stated at the outset of the recording. Indeed, he had formally been placed under arrest before the questioning began.

The fact of interrogation is equally clear. The Supreme Court defines interrogation as conduct reasonably likely to elicit an incriminating response. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). The agents' conduct, including direct questioning, offering lengthy explanations even when none were requested, and repeatedly asking Mr. Sauke if he had any questions even after he had answered no, is conduct likely to elicit an incriminating response. Though in no way dispositive, one can reasonably conclude that that was among the agents' objectives, if not the whole point.

<u>Failure to Respect Invocation of Right to Silence</u>

When asked if he as willing to talk to the agents, Mr. Sauke said "I don't want to talk."   Following an unsolicited description of federal criminal procedures, when asked if he had any questions for the agents, he said "no."   *Miranda* states: "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."   *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966).   Mr. Sauke's invocation of his right to silence was not respected.

Statements taken in violation of *Miranda's* protections are inadmissible.   *See, e.g., Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526 (1994)*; U.S. v. Vanover*, 630 F.3d 1108, 1114 (8th Cir. 2011); *U.S. v. Simpkins*, 978 F.3d 1, 9 (1st Cir. 2020).

Conclusion

Because Mr. Sauke was subjected to custodial interrogation following his invocation of his right to silence, the resulting statements should be suppressed from further use against him.

Respectfully submitted,

DATED: June 4, 2021　　　　　　　　GOETZ & ECKLAND P.A.

By: __*s/Andrew H. Mohring*_____
ANDREW H. MOHRING
Attorney Registration No. 190731
Banks Building
615 1st Avenue NE, Suite 425
Minneapolis, MN 55413
(612) 874-1552

ATTORNEY FOR DEFENDANT