UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 21-cr-36 (NEB/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Dayton Charles Sauke, | |
| Defendant. | |

---

Dayton Charles Sauke is charged with one count of possessing an unregistered short-barreled shotgun that was seized on January 15, 2021 from a vehicle he was driving. Indictment, Docket No. 9. He brings three motions to suppress evidence and statements from November 6, 2019 and January 15, 2021. Docket Nos. 30, 32, 34. For the reasons discussed below, the Court recommends denying the motions.

### I. Motion to Suppress Evidence Obtained as a Result of Warrantless November 6, 2019 Searches and Seizures

Sauke moved to suppress evidence obtained as a result of a search and seizure on November 6, 2019.[1] Docket No. 32. The Government responded that it does not intend to use any evidence seized on that date to prove its case against Sauke for unlawful possession of the unregistered short-barreled shotgun on January 15, 2021. Gov't Response 3, Docket No. 39. At the hearing Sauke agreed this motion is moot based on the Government's representation. Accordingly, the Court recommends it be denied as moot.

---

[1] The events on November 6, 2019 are described in Sara Thomas Affidavit ¶ 9 n.2 in Support of Criminal Complaint, Docket No. 1-1.

**II.    Motion to Suppress November 6, 2019 and January 15, 2021 Statements, Admissions, and Answers**

Sauke moved to suppress statements made on November 6, 2019 and January 15, 2021. Docket No. 30. As to November 6, 2019 statements, the Government responded it does not intend to use any such statements during its case-in-chief against Sauke for unlawful possession of an unregistered firearm on January 15, 2021. Gov't Response 2, Docket No. 39. Based on the Government's representation, Sauke agreed at the hearing that his motion is moot with respect to the November 6, 2019 statements. Accordingly, the Court recommends denying it as moot to the extent it seeks to suppress statements made on November 6, 2019.

With respect to January 15, 2021, Sauke seeks to suppress a statement he made while in custody at the Faribault Police Station after he invoked his right to remain silent upon being advised of his *Miranda* rights. For the reasons stated below, the Court recommends Sauke's motion be denied.

**A.    Findings of Fact**

On January 15, 2021 Special Agents Sara Thomas and Laura Gulick of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) conducted an in-custody interview of Sauke at the Faribault Police Station. Their entire encounter lasted about 10 minutes. *See* Def. Ex. 1 (Thomas Report); Gov't Ex. 4 (audio-only recording) & Ex. 5 (video).

Before the interview Agent Thomas changed Sauke's handcuff position to the front of his body so he would be more comfortable. Gov't Ex. 5 at 2:02-3:19. Agent Gulick asked whether he wanted any water or needed to use the restroom. *Id.* at 2:29-:31. Sauke requested water, and a bottle was brought and opened for him. *Id.* at 2:30-31, 5:34-:41. Agent Thomas obtained the correct pronunciation and spelling of Sauke's name, his date

of birth, address, and phone number. *Id.* at 3:50-4:26. She read him his *Miranda* rights from a form and asked whether he understood them. *Id.* at 4:48-5:12, 5:55-:56. Sauke nodded his head yes and said "I don't want to talk." *Id.* at 5:55-59. Agent Thomas said "that's completely fine" and "if that changes, let us know." *Id.* at 6:00-:05. She then said "we're not going to ask you any more questions since you don't want to talk" but that she was going to "let you know the process going forward and get a little bit of more information from you just for booking." *Id.* at 6:07-:19.

Agent Thomas asked whether Sauke wanted anyone to be contacted; asked for his Social Security number and whether and where in Minnesota he was born; and explained the federal charges against him and the process for transporting him into federal custody. *Id.* at 6:21-7:39. She asked whether he had any questions for them, and he said no. *Id.* at 7:40-:42. Agent Thomas said she would ask the officers to come in, and told Sauke to take his time finishing his bottle of water and to let them know if he had any questions. *Id.* at 7:43-52.

As the two agents prepared to leave the interview room Agent Gulick said, "Do you have any questions for us? Sorry, you look a little — I understand it's a little bit of a shock — I just want to make sure before we leave and you start going through the process that now is your opportunity to ask us questions." *Id.* at 7:56-8:05. She added, "I understand you don't want to talk to us." *Id.* at 8:06-:09. Sauke then asked, "What kind of court does the ATF do?" *Id.* at 8:09-:14. Agent Gulick responded that ATF is a federal agency and asked whether Sauke had any experience with or knew anything about ATF. *Id.* at 8:15-:20. Sauke responded, "That you should be a convenience store." *Id.* at 8:20-21. Agent Gulick laughed and said, "Alcohol, tobacco, firearms, yeah, who's bringing the chips? I've seen that shirt." *Id.* at 8:22-:27. She then described the agency and what it does. *Id.* at

3

8:28-:53. She also explained how the process would unfold after Sauke was transported into federal custody, that he would have an opportunity to meet with a federal public defender to discuss the charge before appearing in front of a judge, and that his initial appearance in court would likely happen within a day or two after the upcoming Monday federal holiday. *Id.* at 8:54-10:35. Agent Gulick then said, "Any other questions we can answer for you, we're happy to," to which Sauke replied in the negative and Agent Gulick said, "okay." *Id.* at 10:38-:41. The agents then gathered their papers from the table and left the room. *Id.* at 10:44-11:28.

### B. Conclusions of Law

A person facing custodial interrogation must be informed that, under the Fifth Amendment, "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). Statements obtained during a custodial interrogation without proper warning and waiver of these rights are not admissible against the defendant. *Id.* If a person "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 473-74. Interrogation for *Miranda* purposes refers "not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980).

The parties do not dispute that Sauke was in custody and that he invoked his right to remain silent after being advised of his *Miranda* rights. Sauke contends Agents Thomas and Gulick violated his "right to silence" when they continued to talk to him and that his

"convenience store" statement must be suppressed. Sauke Post-Hrg. Mem. 4-5, Docket No. 58. The Government responds that the statement was not made in response to interrogation, his *Miranda* rights were not violated, and the statement should not be suppressed.[2] Gov't Post-Hrg. Mem. 6-8, Docket No. 61.

The video of the 10-minute encounter shows that the ATF agents acknowledged Sauke's invocation of his right to remain silent and did not interrogate him. They asked routine booking questions, explained the charge against him and the process going forward, asked him whether he had any questions, and engaged in a short exchange with him to explain the ATF and what it does after he asked "what kind of court does the ATF do." The video also shows Sauke's "convenience store" comment is a joking reference to a saying found on t-shirts and Agent Gulick understood it as such, laughing after he said it and saying that she had seen those shirts.

Sauke argues that the agents should have simply stopped talking because he never asked them to explain the process to him, and they should not have asked him more than once whether he had any questions because he already told them no. *See* Sauke Post-Hrg. Mem. 2 ("Although he did not ask, he was told that the agents wanted to tell him about the process going forward. . . . Again without any initiation by Mr. Sauke, . . . an agent entered into a monologue about what would happen going forward.") 3 ("Notwithstanding these clear answers [that he had no questions], the agents repeated

---

[2] The Government asserts that Sauke is challenging the routine booking questions as well as the "convenience store" comment. Gov't Post-Hrg. Mem. 2, Docket No. 61. While the Court agrees that Sauke complains generally about everything that was said after he told the agents he did not want to talk to them, he does not specifically identify any answer he gave or anything else he said that he seeks to suppress other than his "convenience store" statement. *See* Sauke Post-Hrg. Mem., Docket No. 58. It is well established that basic identification information obtained for booking purposes is not interrogation under *Miranda*. *See United States v. McLaughlin*, 777 F.2d 388, 391 (8th Cir. 1985).

5

the question, asking if he had any questions for them and saying that they just want to make sure."), Docket No. 58. Sauke claims this was "conduct likely to elicit an incriminating response," *id.* at 4, and therefore his "invocation of his right to silence was not respected," *id.* at 5.

But Sauke misconstrues his rights under *Miranda*, which guarantees his "right to remain silent" and to have "interrogation" cease once he invokes that right. It is not a general "right to silence" (a phrase he uses throughout his memorandum) that prohibits agents from volunteering information and explanations about the process, asking if he has any questions, and engaging in conversation in response to his question. Sauke faults Agent Gulick for double-checking whether he had any questions, after Agent Thomas had already done so. But it was not improper for her to again ask whether he had questions, just as she again acknowledged he had invoked his *Miranda* rights: "I just want to make sure before we leave and you start going through the process that now is your opportunity to ask us questions. I understand you don't want to talk to us." Gov't Ex. 5 at 7:56-8:09. It was Sauke who initiated the specific exchange with Agent Gulick regarding the ATF by asking her "what kind of court does the ATF do." Giving Sauke another opportunity to ask questions about the process, while explicitly acknowledging he had invoked his right to remain silent, is not words or conduct reasonably likely to elicit an incriminating[3] response. Thus, there was no violation of Sauke's Fifth Amendment rights, and the Court recommends his motion to suppress be denied.

---

[3] The Court assumes for purposes of this motion that the statement is "incriminating" with respect to the charge against him for possessing an unregistered short-barreled shotgun.

6

### III. Motion to Suppress Evidence Obtained as a Result of January 15, 2021 and January [2]7, 2021[4] Search and Seizure (Warrants)

Sauke moved to suppress evidence obtained as a result of searches and seizures conducted under three search warrants for Sauke's person and residence [Gov't Ex. 1], vehicle [Gov't Ex. 2], and laptop computer and cell phone [Gov't Ex. 3]. Docket No. 34.

#### A. January 15, 2021 Search Warrants

On January 15, 2021 United States Magistrate Judge Hildy Bowbeer issued separate warrants to search Sauke's person and a residence at a specified address in Owatonna, Minnesota (including attached garage and vehicles in the garage or driveway) [Gov't Ex. 1] and a particularly identified Chevrolet Trailblazer vehicle [Gov't Ex. 2]. The residence and vehicle are further identified in the supporting affidavits of ATF Agent Sara Thomas as a residence owned by his girlfriend/wife's parents and a vehicle registered to her mother.

The warrant for Sauke's person and residence identifies in detail the objects of the warrant, which can be summarized as follows: firearms and ammunition and related parts and accessories; controlled substances and related equipment and paraphernalia; records and items relating to the manufacture, possession, receipt, or sale of firearms or controlled substances, including customers, suppliers, and sources; large amounts of U.S. currency; evidence of proceeds derived from possessing and distributing firearms or controlled substances; machinery and equipment capable of manufacturing firearms; cameras, photographs, video, cell phones, computers, and other devices with stored memory that may contain evidence relating to firearms, ammunition, or controlled

---

[4] Although the motion identifies it as a January "17" search warrant, the document itself shows the warrant was issued on January 27, 2021. *See* Gov't Ex. 3.

7

substances; and records or personal belongings indicating ownership or control of the residence/premises.

The warrant for Sauke's vehicle identifies in detail the objects of the warrant, which can be summarized as follows: the controlled buy funds used to purchase the firearm from Sauke; firearms and ammunition and related parts and accessories; controlled substances and related equipment and paraphernalia; records and items relating to the manufacture, possession, receipt, or sale of firearms or controlled substances, including customers, suppliers, and sources; large amounts of U.S. currency; evidence of proceeds derived from possessing and distributing firearms or controlled substances; machinery and equipment capable of manufacturing firearms; cameras, photographs, video, cell phones, computers, and other devices with stored memory that may contain evidence relating to firearms, ammunition, or controlled substances; and records or personal belongings indicating ownership or control of the vehicle.

The probable cause set forth in Agent Thomas's affidavits was based on court and probation records; law enforcement records; public records; firearm licensing databases; surveillance information; information from the U.S. Postal Inspection Service; Snapchat screen shots provided by a confidential informant; Sauke's social media posts; and Sauke's Snapchat posts and private messages with an undercover ATF agent.

### B.    January 27, 2021 Search Warrant

On January 27, 2021 United States Magistrate Judge Tony Leung issued a warrant authorizing a manual and forensic examination of a particularly identified laptop computer and cell phone [Gov't Ex. 3] that had been seized from Sauke's residence and vehicle, respectively, pursuant to the January 15, 2021 warrants.

The objects of the warrant are identified in detail and include all records on the laptop computer and cell phone that relate to violations of federal statutes on manufacturing or dealing in firearms without a license; possession of a firearm by an unlawful user or addict of controlled substances; drug possession, trafficking, or conspiracy; possession of an unregistered firearm; and related offenses. Examples of such records include files or software that work in conjunction with a Computer Numerical Control (CNC) machine; instruction manuals for manufacturing or assembling firearms; web history, notes, emails, letters, texts, messages, social media posts, and other communications, including photographs and videos, relating to controlled substance or firearm offenses, extremist views that espouse violence, or threatening conduct; information recording Sauke's schedule, travel, or location during the relevant time period; financial records that may relate to proceeds from firearm or drug sales; and evidence of use or ownership of the laptop computer and cell phone.

The probable cause set forth in Agent Thomas's supporting affidavit was based on probation records; firearm licensing databases; information from the U.S. Postal Inspection Service; Snapchat screen shots provided by a confidential informant; Sauke's Snapchat posts and private messages with an undercover ATF agent; a controlled purchase of a privately made firearm on January 15, 2021; and items seized from Sauke's residence and vehicle pursuant to the January 15, 2021 warrants, including firearms, ammunition, cash, a CNC device, firearm kits and parts, tools, instruction manuals, packages from firearm supply stores, receipts, drug paraphernalia, and THC.

### C.  Conclusions of Law

A search warrant is supported by probable cause if, based on the totality of the circumstances set forth in the application and affidavits, there is a fair probability that

contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The duty of a reviewing court is simply to ensure that the court issuing the warrant had a substantial basis for concluding that probable cause existed. *Id.* at 238-39.

Sauke's motion asserted generally that the warrants were not supported by probable cause, but he did not identify any facts or allege any particular deficiencies. Docket No. 34. He did not present evidence or make any arguments on this motion at the May 25, 2021 hearing. His post-hearing memorandum did not address the warrants. *See* Docket No. 58. The Government states that a "four corners" review shows the supporting affidavits provide a substantial basis to conclude that probable cause existed to issue the warrants. Gov't Response 3-4, Docket No. 39; Gov't Post-Hrg. Response 9-11, Docket No. 61. The Court agrees.

The three warrants issued on January 15 and 27, 2021 were based on ample probable cause as set forth in the lengthy and detailed affidavits of Agent Thomas and as determined by Magistrate Judges Bowbeer and Leung. Therefore, there is no basis to suppress evidence obtained from searches pursuant to the warrants, and the Court recommends Sauke's motion be denied.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1. Defendant Sauke's Motion to Suppress November 6, 2019 and January 15, 2021 Statements, Admissions, and Answers [Docket No. 30] be DENIED as follows: that the motion be denied as moot to the extent it seeks to suppress statements made on November 6, 2019; and the motion be denied with respect to statements on January 15, 2021.

2. Defendant Sauke's Motion to Suppress Evidence Obtained as a Result of Warrantless November 6, 2019 Searches and Seizures [Docket No. 32] be DENIED AS MOOT.

3. Defendant Sauke's Motion to Suppress Evidence Obtained as a Result of January 15, 2021 and January [2]7, 2021 Search and Seizure (Warrants) [Docket No. 34] be DENIED.

Dated: July 9, 2021                       ___s/David T. Schultz_____
                                                           DAVID T. SCHULTZ
                                                           U.S. Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).