UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-36 (NEB)

UNITED STATES OF AMERICA,

           Plaintiff,

                            **GOVERNMENT'S SENTENCING**
          v.                      **MEMORANDUM**

DAYTON CHARLES SAUKE,

           Defendant.

      The United States of America, by and through its attorneys, Charles J. Kovats, Jr.,

Acting United States Attorney for the District of Minnesota, and Justin A. Wesley,

Assistant United States Attorney, hereby respectfully submits its position and

memorandum on sentencing. In accord with the plea agreement, the United States

recommends a sentence of imprisonment of 33 months.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

      The United States agrees with, and incorporates by reference, the facts from the

"Offense Conduct" section of the Presentence Investigation Report (DCD 78, hereinafter

"PSR," ¶¶ 7-22), as well as those facts from the Plea Agreement (DCD 70 ¶ 2).[1]

      The defendant has a history involving drugs and possession of firearms. In July

2020, law enforcement became aware of the defendant's manufacturing and trafficking of

---

[1] In an effort to streamline the sentencing hearing, the parties agreed to submit certain evidence to the Court without requiring testimony. The Government will submit a flash drive with the evidence it wishes the Court to consider in addition to the information in the presentence investigation report.

privately made firearms, commonly referred to by the public as "ghost guns." The defendant would advertise these privately made firearms on Snapchat as "untraceable" and "throwaway murder pieces." The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") was able to use an undercover agent ("UA") to monitor the defendant's Snapchat account and ultimately arranged to purchase one of these privately made firearms from the defendant.

On January 15, 2021, the defendant met with two undercover ATF agents in a Walmart parking lot in Faribault, Minnesota, for the purpose of selling them a privately made firearm. During the meeting, the defendant took a down payment of $900 for two additional privately made firearms and talked about how he had made and sold approximately 120 Glock style firearms in 2020. The undercover agents also noticed the defendant had a sawed-off shotgun in his vehicle. After the defendant sold the privately made firearm to the undercover agents, he was placed under arrest and the sawed-off shotgun was recovered by law enforcement. Examination of the sawed-off shotgun confirmed it had a total overall length of 18 inches and an approximate barrel length of 11 inches.

The defendant was initially charged by complaint on January 15, 2021. On February 11, 2021, a grand jury returned a one-count Indictment, charging the defendant with possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. The defendant has remained in federal custody since his arrest on January 15, 2021. (PSR p. F.1).

On August 25, 2021, the defendant appeared with his counsel and pled guilty to Count 1 of the Indictment pursuant to a written plea agreement filed with the Court. (PSR ¶¶ 2; DCD  69-70).

On November 10, 2021, the United States Probation Office issued a final PSR, which determined the defendant's total offense level to be 17 and his criminal history category to be III, resulting in an effective advisory Guidelines' range of 30 to 37 months' imprisonment. (PSR ¶¶ 76). The plea agreement differed slightly in that the United States contemplated a total offense level of 19 and the defendant contemplated an offense level of 15, and both parties anticipated a criminal history category of II. Therefore, the United States anticipated a Guidelines range of 33 to 41 months' imprisonment, and the defendant anticipated a Guidelines range of 21 to 27 months' imprisonment. (PSR ¶¶ 4, DCD 70 ¶ 6.e).

## ARGUMENT

In following the sentencing methodology laid out by the Supreme Court, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50. Section 3553(a) requires the Court to consider a number of factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from

3

further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a). But a district court is not required to provide a mechanical recitation of the Section 3553(a) factors and "has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Ballard*, 872 F.3d 883, 885 (8th Cir. 2017); *United States v. San-Miguel*, 634 F.3d 471, 475-76 (8th Cir. 2011).

### A.   <u>The Guidelines Calculations</u>

The United States erred by not considering the 2-level upward adjustment for possession of a destructive device under U.S.S.G. § 2K2.1(b)(3)(B) and comment. (n.1). This does appear to be a legally correct enhancement. However, per the Plea Agreement, the government is not advocating for this enhancement.

In accord with the Plea Agreement, (DCD 70, ¶ 6.h), the United States advocates for a sentence of 33 months' imprisonment, as a sentence that is sufficient but not greater than necessary to comply with the purposes set forth in Section 3553(a)(2).

### B.   <u>Application of U.S.S.G. § 2K2.1(b)(6)(B)</u>

The United States believes that the offense level should be increased by 4-levels because the defendant used or possessed the short-barreled shotgun in connection with another felony offense, specifically, engaging in the business of manufacturing and dealing in firearms without a license in violation of 18 U.S.C. 922(a)(1)(A). U.S.S.G. § 2K2.1(b)(6)(B). If the contraband being sold by the defendant were controlled substances, there would be no question that the possession of a sawed-off shotgun was "in connection" to the offense. The enhancement should equally apply here, because the defendant

4

possessed a sawed-off shotgun while engaging in the trafficking firearms, and it had the potential to facilitate the offense. *See U.S. v. Hemsher*, 893 F.3d 525, 534 (8th Cir. 2018) (applying the four-level enhancement where the defendant was convicted of possession of stolen firearms and finding his possession offense was connected to his trafficking of firearms). Application note 14(A) states that the enhancement applies if the firearm "facilitated, *or had the potential of facilitating*, another felony offense[.]" (emphasis added). "[W]here a defendant keeps a firearm 'at an easily accessible location' while committing a felony offense, a sentencing court may infer that the firearm 'emboldened the defendant to engage in the illegal act.'" *U.S. v. Mangum*, 625 F.3d 466, 467-68 (8th Cir. 2010) (quoting *U.S. v. Guiheen*, 594 F.D3D 589, 591 (8th Cir. 2010).

Practically speaking, if the transaction were to have gone awry in any way, the defendant had the sawed-off shotgun easily accessible to him in order to make sure the transaction went smoothly. For example, if after the transaction was complete, the buyer turned the privately made firearm on the defendant and demanded his cash back, the defendant could use the sawed-off shotgun. If a would-be buyer simply decided he was going to rob the defendant of the privately made firearm instead of buying it, the defendant had a weapon easily accessible to him to prevent that. Much like firearms are a tools of the trade in the drug business, it would seem that a firearm is equally as useful to an illegal gun dealer who might have to resort to self-help.

The PSR's reasoning for not applying the enhancement was that the defendant merely had the short-barreled shotgun for "bragging rights." PSR Addendum A.1. In support of that position, the PSR referenced two things: (1) when asked if the gun was for

sale, the defendant responded it was "his baby," and (2) based on the defendant's Snapchat history, he frequently glorified his possession of the shotgun through posts. Neither of those points are accurate based on the evidence in this case, and they don't negate the fact that the sawed-off shotgun *had the potential of facilitating the felony crime of manufacturing and dealing firearms*.

Regarding the first point, the United States will submit the body worn camera footage from one of the undercover agents, which will show that the defendant was merely parroting the words of the UA when he said the sawed-off shotgun was not for sale and referred to it as his "baby." During that part of the conversation, the defendant was being

asked whether he recommended his more expensive ($1,500) competition style firearm or his less expensive ($700) Glock 1911 style firearm. The following conversation ensued:[2]

| | |
|---|---|
| UA: | What do you carry yourself? |
| Defendant: | Me, myself, I carry a 1911. |
| UA: | 1911? |
| Defendant: | Or…a shotgun [displaying the sawed-off shotgun] |
| UAs: | Oh, you got a sawed-off?! No shit. That thing's fucking sweet. Damn. How about that, can I take that? Or is that your baby? |
| Defendant: | That's my baby. Yea, I can get that ordered right away. |
| UA: | Okay. |

Regarding the PSR's second point, the defendant did not "frequently glorify" his possession of the sawed-off shotgun through social media posts. In fact, he only recently acquired the sawed-off shotgun according to his posts from December 26, 2020:

---

[2] The timestamp on the BWC is approximately 20:02:23.





The defendant only posted about the sawed-off shotgun one additional time on January 5, 2021 before his arrest on January 15, 2021:



The defendant's social media posts did not "frequently glorify" the sawed-off shotgun. Rather, his posts frequently glorified drugs and the illegal manufacturing and dealing of firearms.

10

A. **The 3553(a) Factors**

A consideration of the 3553(a) factors warrants a sentence of 33 months' imprisonment.

1. <u>Nature and Circumstances of the Offense</u>

The offense conduct itself was very serious. As noted above, the defendant possessed a sawed-off shotgun while selling a privately made firearm to an undercover ATF agent. He then agreed to make and sell two more firearms for the undercover agents and accepted $900 as a down payment. When asked what he usually carried with him, the defendant displayed the sawed-off shotgun to the undercover agents during the illegal firearms transaction.

2. <u>History and Characteristics of the Defendant</u>

The United States submits that the PSR accurately and adequately describes the defendant's criminal history, personal history, and characteristics. The defendant was diagnosed with autism at a young age and has a history of substance abuse. The United States acknowledges that recent diagnoses, medications, and treatment since the defendant has been incarcerated appear to have been beneficial for him. Additionally, the defendant was employed as an electrician apprentice and was described as dependable and a great addition to the team. However, it would be preferable for the defendant to apply his work ethic and entrepreneurial skills toward lawful activities.

3. <u>Needs of Sentencing and Other 3553(a) Factors</u>

A sentence of 33 months, in accord with the plea agreement, is warranted by the needs of sentencing. On the one hand, the defendant's crime was extremely serious. He

11

possessed a sawed-off shotgun while engaging in an illegal firearm transaction involving that furthered his firearm business. On the other hand, the defendant is a young man who has had some recent mental health diagnoses and treatment which may improve the likelihood that he can become a productive and law-abiding citizen. Whether or not the Court applies the 4-level enhancement for possessing the sawed-off shotgun in relation to his unlawful firearms manufacturing and dealing business, those facts should be taken into consideration at sentencing.

There do not appear to be any significant aggravating or mitigating factors in this case. On balance, a sentence of 33 months would serve the needs of sentencing to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to avoid unwarranted sentencing disparities among defendants.

## CONCLUSION

For all the foregoing reasons, the United States respectfully recommends that the Court impose a sentence of 33 months' imprisonment.

Respectfully submitted,

Dated: January 12, 2022     CHARLES J. KOVATS, JR.
Acting United States Attorney

/s *Justin A. Wesley*

BY: JUSTIN A. WESLEY
Assistant U.S. Attorney
Attorney ID No. 0389189